## Charles H. Dunham, Appellee, v. Black Diamond Coal Company, Appellant.

1. MINERS AND MINERS ACT—*extent of duty to mark dangerous places.* The provisions of the Mines and Miners Act which provide that no one shall be allowed to enter a mine to work therein except under the direction of the mine manager "until all conditions have been made safe" and that when any *dangerous condition is dis-covered* to exist the examiner shall place a notice to all men to keep out, while it is made the duty of the mine manager to "see that all dangerous places above and below are properly marked and that danger signals shall be displayed wherever they are required," apply to all dangerous places in a mine whether such places are dangerous by virtue of their original construction or by reason of conditions subsequently arising.

2. PLEADING—*what allegations of declaration may be rejected as surplusage.* In an action of tort all allegations not essential to the cause of action may be rejected as surplusage and a recovery sustained if proof is made of the essential allegations.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1908. Affirmed. Opinion filed November 24, 1908.

CONKLING & IRWIN, for appellant.

ROBERT H. PATTON, for appellee.

MR. JUSTICE RAMSAY delivered the opinion of the court.

Appellee brought suit in the Circuit Court of Sangamon county against appellant to recover for damages sustained by him through the wilful failure of appellant to comply with the Revised Statutes governing mines and miners. There was a verdict and judgment in favor of appellee in the sum of $365 and this appeal followed.

Appellee's declaration contained three counts: The first count charged that appellee was working as a mule driver in appellant's coal mine; that there was in an entry of said mine in which appellee worked,

and within reach of the mule while in use, a live electric wire which was not properly insulated or otherwise protected; that appellant wilfully failed to comply with the statute in this, that it did not have its mine examiner visit said mine and inspect the same and observe any unsafe conditions, and mark the same as a dangerous place, etc., and had not prevented appellee from entering to work in said mine until all conditions had been made safe; that appellee entered said mine to work, and while driving the mule hitched to a coal car, and because of the unprotected condition of said wire, said mule received a shock by coming in contact with said live wire and because thereof became unmanageable and pulled the coal car from the track and against a post standing close to the track and caught appellee between the said car and post and injured him, etc.

The second count contained the same allegations, in substance, as to the unprotected condition of the live electric wire, the shock to the mule and injury to appellee, etc., and charged the negligence to consist in appellant's wilful failure to have its mine manager see to it that all dangerous places were properly marked and that danger signals were displayed and that the place in question was not marked as dangerous, etc.

The third count is based upon the alleged wilful failure of appellant to observe that provision of the statute relating to mines and miners which provides that "no one shall be allowed to enter the mine to work therein except under the direction of the mine manager, until all conditions shall have been made safe" and that appellee was wilfully permitted to enter the mine to work while the conditions therein were unsafe and while there at work was injured, etc.

Issue was taken by plea of not guilty upon these three counts and a verdict returned for appellee as hereinbefore stated.

The undisputed evidence shows that in June, 1907, appellee was at work for appellant in its coal mine, as

a mule driver, hauling coal cars in the entry; that over a part of the roadway, which he used in his work, there ran a trolley wire to convey an electric current to a motor used in the entry of the mine. This trolley wire was only about five or five and a half feet above the bottom of the entry and about twelve inches outside the rail and was uninsulated and unprotected. While there is some conflict in the evidence, we think the jury were warranted in finding that at the time in question there was a current of electricity passing through the wire and that the mule's head came in contact with the wire whereby he received a shock and became unmanageable and injured appellee in the manner set up in his declaration.

Appellant insists that the material question is whether the wire used by appellant uninsulated and when used to carry an electric current constituted "a dangerous condition" within the meaning of the statute governing miners, which it was the duty of the mine examiner to mark, and argues that the duties of the mine examiner and mine manager do not apply to defects in construction which are of a permanent nature and intended to be such, but apply only to places that become dangerous or unsafe by reason of new conditions or changes which make such places dangerous or unsafe.

The statute in question provides that no one shall be allowed to enter the mine to work therein, except under the direction of the mine manager, "until all conditions have been made safe" and that when any dangerous condition is discovered to exist, the examiner shall place a notice to all men to keep out; while it is made the duty of the mine manager to "see that all dangerous places above and below are properly marked and that danger signals shall be displayed wherever they are required."

This language clearly implies that all dangerous places in a mine shall be marked and made safe whether of a permanent nature or made so by changed

conditions. What appellant terms in its brief a "sporadic" dangerous condition may become a permanent one by lapse of time. Under appellant's contention there would be a time before the transition from a "sporadic" to a permanent condition when there would be a liability in case of injury, while after the transition there would be no liability solely because the dangerous condition had become permanent, which would involve the task of determining just when the transition from "sporadic" to permanent condition became complete.

In our judgment it can make no difference that the condition became or was dangerous by reason of defective permanent conditions. If the dangerous condition in fact exists at the time the miner is allowed to enter the mine to work in the mine, the statute above referred to fixes the duties of those in charge of the mine and a conscious failure to observe these duties is wilful negligence.

Appellant next insists that it was error upon the part of the trial court not to instruct the jury to find for defendant as to the second count of the declaration upon the claim that it charges the duty to mark and display a danger signal at the place in question to have been imposed upon the mine manager personally and not that it was his duty only to see that this was done. It is true that the second count contains the allegation, among others, that the mine manager failed to mark and display danger signals, but these allegations can well be treated as surplusage, especially after plea filed, for without them there were allegations in the count sufficient to charge that appellant's mine manager did not see to it that all dangerous places above and below in said mine were properly marked, and that danger signals were displayed, etc.

There is no reversible error in the record and the judgment is affirmed.

*Affirmed.*